54 A.3d 1

Viviette APPLEWHITE; Wilola Shinholster Lee; Grover Freeland; Gloria Cuttino; Nadine Marsh; Dorothy Barksdale; Bea Bookler; Joyce Block; Henrietta Kay Dickerson; Devra Mirel ("Asher") Schor; the League of Women Voters of Pennsylvania; National Association for the Advancement of Colored People; Pennsylvania State Conference; Homeless Advocacy Project

v.

The COMMONWEALTH of Pennsylvania; Thomas W. Corbett, in his capacity as governor; Carole Aichele, in her capacity as Secretary of the Commonwealth.

Appeal of Viviette Applewhite; Wilola Shinholster Lee; Gloria Cuttino; Nadine Marsh; Bea Bookler; Joyce Block; Henrietta Kay Dickerson; Devra Mirel ("Asher") Schor; The League of Women Voters of Pennsylvania; National Association for the Advancement of Colored People, Pennsylvania State Conference; Homeless Advocacy Project.

Supreme Court of Pennsylvania.

Argued Sept. 13, 2012.

Decided Sept. 18, 2012.

564

Jennifer R. Clarke, Public Interest Law Center of Philadelphia, Benjamin David Geffen, Philadelphia, David P. Gersch, Penda D. Hair, Marian Karen Schneider, Witold J. Walczak, American Civil Liberties Union of Pennsylvania, for V. Applewhite, W. Lee, G. Cuttino, N. Marsh, B. Bookler, J. Block, H. Dickerson, D. Schor, et al.

Elise Michelle Bruhl, City of Philadelphia Law Department, for Appellant Amicus Curiae, City of Philadelphia, et al.

Irwin William Aronson, Harrisburg, John R. Bielski, Ralph J. Teti, Philadelphia, Allaine S. Williams, Willig, Williams & Davidson, Robert Forest Williams, for Appellant Amicus Curiae, PA. AFL–CIO & PA Building and Construction Trades Council, AFL–CIO.

Karen Coleen Buck, Senior Law Center, for Appellant Amicus Curiae, Senior Law Center AARP; PA Assoc. of Area Agencies on Aging, et al.

Diane Siegel Danoff, Dechert LLP, Philadelphia, Francis James Dermody, III, Defender Association of Philadelphia, Steven M. Freeman, Laurem A. Jones, Robert O. Trestan, for Appellant Amicus Curiae, Anti–Defamation League, Nueva Esperanza Inc., and Latino Justice PRLDEF.

John James Grogan, Howard Israel Langer, Langer Grogan & Diver, P.C., Philadelphia, Peter E. Leckman, for Appellant Amicus Curiae, Common Cause of Pennsylvania.

Matthew S. Hyner, Marek P. Krzyowski, Albert W. Wallis, Benjamin M. Welch, Sigmund S. Wissner–Gross, Elnaz R. Zarrini, for Appellant Amicus Curiae, Barry, Brooks, Engle, Fogg, Frankel, Lyon, M.–Wilson, Plummer, Rand, Segal, Sperling, Rahdert.

Stephen J. Shapiro, Philadelphia, for Appellant Amicus Curiae, Stephen J. Shapiro, in his capacity as Judge of Election for Dist. 635, Tredyffrin Twp., Chester Co.

Stacy Lorraine Shields, Moody & Shields Group LLC, for Appellant Amicus Curiae, Senator Anthony H. Williams, et al.

Tsiwen M. Law, Law & Zaslow, L.L.C., Philadelphia, for Appellant Amicus Curiae, Asian American Legal Defense and Education Fund and the Asian Pacific American Bar Assoc. of PA.

Patrick Schaffner Cawley, Calvin Royer Koons, PA Office of Attorney General, Harrisburg, Linda L. Kelly, Office of Attorney General, Harrisburg, John G. Knorr, III, Harrisburg, Kevin Patrick Schmidt, Fort Washington, for Commonwealth of Pennsylvania.

Dorothy Alicia Hickok, Alfred W. Putnam Jr., Philadelphia, Drinker, Biddle & Reath, LLP, for Thomas W. Corbett, His Capacity as Governor; Carole Aichele, Capacity as Secretary of the Comm.

Robert Ash, Marshall Goldman, CeCe Heil, Peter Michael Rogers, Pittsburgh, Rogers & Rogers, P.C., Stuart Roth, Jay Alan Sekulow, Erik Zimmerman, for Appellee Amicus Curiae, American Center for Law and Justice.

Rodney A. Corey, PA House of Representatives, Harrisburg, for Appellee Amicus Curiae, Republican Caucus of the Pennsylvania House of Representatives.

Lloyd T. Hoppe Jr., Hoppe & Martin, LLP, for Appellee Amicus Curiae, Representatives D. Metcalfe/S. Barrar/S. Bloom, et al.

Richard P. Hutchinson, for Appellee Amicus Curiae, Landmark Legal Foundation.

Amanda Jean Lavis, Harrisburg, for Appellee Amicus Curiae, Dana Mason, Joseph Costello Marise Stillman, Robert Nausbam, et al.

BEFORE: CASTILLE (C.J.), SAYLOR, EAKIN, BAERR, TODD, McCAFFERY, JJ.

## *ORDER*

PER CURIAM.

■ Before this Court is a direct appeal from a single-judge order of the Commonwealth Court denying preliminary injunctive relief to various individuals and organizations who filed a Petition for Review challenging the constitutional validity of Act 18 of 2012, also known as the Voter ID Law. Appellate courts review an order granting or denying a preliminary injunction for an abuse of discretion. *See Summit Towne Ctr., Inc. v. Shoe Show of Rocky Mount, Inc.,* 573 Pa. 637, 828 A.2d 995, 1000 (2003).

The Declaration of Rights set forth in the Pennsylvania Constitution prescribes that elections must be free and equal and "no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage." PA. CONST. art. 1, § 5. The parties to this litigation have agreed that the right to vote in Pennsylvania, as vested in eligible, qualified voters, is a fundamental one.

■ The Voter ID Law was signed into law by the Governor of Pennsylvania in March of this year. For the General Election this November, and for succeeding elections, the legislation generally requires presentation of a photo identification card as a prerequisite to the casting of ballots by most registered voters.

In this regard, the Law contemplates that the primary form of photo identification to be used by voters is a Department of Transportation (PennDOT) driver's license or the non-driver equivalent provided under Section 1510(b) of the Vehicle Code, 75 Pa.C.S. § 1510(b). *See* N.T. at 770–71. Furthermore, the Law specifically requires that—notwithstanding provisions of

Section 1510(b) relating to the issuance and content of the cards—PennDOT shall issue them at no cost:

to any registered elector who has made application therefor and has included with the completed application a statement signed by the elector declaring under oath or affirmation that the elector does not possess proof of identification ... and requires proof of identification for voting purposes.

Act of Mar. 14, 2012, P.L. 195, No. 18, § 2; *see* 25 P.S. § 2626(b). As such, the Law establishes a policy of liberal access to Section 1510(b) identification cards.

However, as implementation of the Law has proceeded, PennDOT—apparently for good reason—has refused to allow such liberal access. Instead, the Department continues to vet applicants for Section 1510(b) cards through an identification process that Commonwealth officials appear to acknowledge is a rigorous one. *See* N.T. at 690, 994. Generally, the process requires the applicant to present a birth certificate with a raised seal (or a document considered to be an equivalent), a social security card, and two forms of documentation showing current residency. *See* N.T. at 467, 690, 793.[1] The reason why PennDOT will not implement the Law as written is that the Section 1510(b) driver's license equivalent is a secure form of identification, which may be used, for example, to board commercial aircraft. *See* N.T. at 699–700, 728–30, 780.

The Department of State has realized, and the Commonwealth parties have candidly conceded, that the Law is not being implemented according to its terms. *See, e.g.,* N.T. at 1010 (testimony of the Secretary of the Commonwealth that "[t]he law does not require those kinds of—the kind of identification that is now required by PennDOT for PennDOT IDs, and it's the Homeland Security issues"). Furthermore, both state agencies involved appreciate that some registered voters have been and will be unable to comply with the requirements maintained by PennDOT to obtain an identification card under Section 1510(b). *See* N.T. at 713 (testimony from a deputy secretary for PennDOT that "at the end of the day there will

---

1. Applicants whose information is already in PennDOT's database may be exempted from these requirements. *See* N.T. at 466.

be people who will not be able to qualify for a driver's license or a PennDOT ID card"), 749, 772, 810, 995. It is also clear to state officials that, if the Law is enforced in a manner that prevents qualified and eligible electors from voting, the integrity of the upcoming General Election will be impaired. *See, e.g.,* N.T. at 480.

Faced with the above circumstances and the present litigation asserting that the Law will impinge on the right of suffrage, representatives of the state agencies have testified under oath that they are in the process of implementing several remedial measures on an expedited basis. Of these, the primary avenue lies in the issuance of a new, non-secure Department of State identification card, which is to be made available at PennDOT driver license centers. However, preparations for the issuance of Department of State identification cards were still underway as of the time of the evidentiary hearing in the Commonwealth Court in this case, and the cards were not slated to be made available until approximately two months before the November election. N.T. at 534, 555, 706, 784, 993. Moreover, still contrary to the Law's liberal access requirement, applicants for a Department of State identification card may be initially vetted through the rigorous application process for a secure PennDOT identification card before being considered for a Department of State card, the latter of which is considered to be only a "safety net." N.T. at 709, 711, 791–95 (testimony from the Commissioner of the Bureau of Commissions, Elections and Legislation that applicants who are unable to procure a PennDOT identification card will be given a telephone number to contact the Department of State to begin the process of obtaining the alternative card); *see also* N.T. at 993.

In the above landscape, Appellants have asserted a facial constitutional challenge to the Law and seek to preliminarily enjoin its implementation. They contend, most particularly, that a number of qualified members of the Pennsylvania voting public will be disenfranchised in the upcoming General Election, because—given their personal circumstances and the limitations associated with the infrastructure through which

the Commonwealth is issuing identification cards—these voters will not have had an adequate opportunity to become educated about the Law's requirements and obtain the necessary identification cards. While there is a debate over the number of affected voters, given the substantial overlap between voter rolls and PennDOT's existing ID driver/cardholder database, it is readily understood that a minority of the population is affected by the access issue. Nevertheless, there is little disagreement with Appellants' observation that the population involved includes members of some of the most vulnerable segments of our society (the elderly, disabled members of our community, and the financially disadvantaged).

On its review, the Commonwealth Court has made a predictive judgment that the Commonwealth's efforts to educate the voting public, coupled with the remedial efforts being made to compensate for the constraints on the issuance of a PennDOT identification card, will ultimately be sufficient to forestall the possibility of disenfranchisement. This judgment runs through the Commonwealth Court's opinion, touching on all material elements of the legal analysis by which the court determined that Appellants are not entitled to the relief they seek.

As a final element of the background, at oral argument before this Court, counsel for Appellants acknowledged that there is no constitutional impediment to the Commonwealth's implementation of a voter identification requirement, at least in the abstract. Given reasonable voter education efforts, reasonably available means for procuring identification, and reasonable time allowed for implementation, the Appellants apparently would accept that the State may require the presentation of an identification card as a precondition to casting a ballot. The gravamen of their challenge at this juncture lies solely in the implementation.

Upon review, we find that the disconnect between what the Law prescribes and how it is being implemented has created a number of conceptual difficulties in addressing the legal issues raised. Initially, the focus on short-term implementation, which has become necessary given that critical terms of the

statute have themselves become irrelevant, is in tension with the framing of Appellants' challenge to the Law as a facial one (or one contesting the Law's application across the widest range of circumstances). In this regard, however, we agree with Appellants' essential position that if a statute violates constitutional norms in the short term, a facial challenge may be sustainable even though the statute might validly be enforced at some time in the future. Indeed, the most judicious remedy, in such a circumstance, is the entry of a preliminary injunction, which may moot further controversy as the constitutional impediments dissipate.

Overall, we are confronted with an ambitious effort on the part of the General Assembly to bring the new identification procedure into effect within a relatively short timeframe and an implementation process which has by no means been seamless in light of the serious operational constraints faced by the executive branch. Given this state of affairs, we are not satisfied with a mere predictive judgment based primarily on the assurances of government officials, even though we have no doubt they are proceeding in good faith.

Thus, we will return the matter to the Commonwealth Court to make a present assessment of the actual availability of the alternate identification cards on a developed record in light of the experience since the time the cards became available. In this regard, the court is to consider whether the procedures being used for deployment of the cards comport with the requirement of liberal access which the General Assembly attached to the issuance of PennDOT identification cards. If they do not, or if the Commonwealth Court is not still convinced in its predictive judgment that there will be no voter disenfranchisement arising out of the Commonwealth's implementation of a voter identification requirement for purposes of the upcoming election, that court is obliged to enter a preliminary injunction.

Accordingly, the order of the Commonwealth Court is VACATED, and the matter is returned to the Commonwealth Court for further proceedings consistent with this Order. The Commonwealth Court is to file its supplemental opinion on or

before October 2, 2012. Any further appeals will be administered on an expedited basis.

Jurisdiction is relinquished.

Justice TODD files a Dissenting Statement which Justice McCAFFERY joins.

Justice McCAFFERY files a Dissenting Statement which Justice TODD joins.

Justice TODD, dissenting.

I respectfully dissent.

By its *Per Curiam* Order today, this Court remands this matter for further hearings so that the lower court may attempt to predict—again—whether the Commonwealth can implement this new law without disenfranchising a substantial number of voters in November. In my view, the time for prediction is over.

Forty-nine days before a Presidential election, the question no longer is whether the Commonwealth *can* constitutionally implement this law, but whether it *has* constitutionally implemented it. Despite impending near-certain loss of voting rights, despite the Commonwealth's admitted inability thus far to fully implement Act 18 and its acceptance that, presently, "the Law is not being implemented according to its terms," and despite the majority's concession that the "most judicious remedy" in such circumstances would be to grant an injunction, the majority nonetheless allows the Commonwealth to virtually ignore the election clock and try once again to defend its inexplicable need to rush this law into application by November 6, 2012.

The majority correctly sets forth the standard of review that we, as the appellate court, are to apply in reviewing a lower court's order granting or denying a preliminary injunction. We review for an abuse of discretion. Yet, the majority utterly fails to apply that standard to this appeal. My application of the required standard leads me to the inescapable conclusion that the lower court indeed abused its discretion in

failing to find that irreparable harm of constitutional magnitude—the disenfranchisement of a substantial number of eligible, qualified, registered voters, many of whom have been proudly voting for decades—was likely to occur based on the present structure, timing, and implementation of Act 18; in my assessment, the lower court should have granted a preliminary injunction. Therefore, I would reverse.

Like the majority, I am not "satisfied with a mere predictive judgment based primarily on the assurances of government officials." But, unlike the majority, I have heard enough about the Commonwealth's scramble to meet this law's requirements. There is ample evidence of disarray in the record, and I would not allow chaos to beget chaos. The stated underpinnings of Act 18—election integrity and voter confidence—are undermined, not advanced, by this Court's chosen course. Seven weeks before an election, the voters are entitled to know the rules.

By remanding to the Commonwealth Court, at this late date, and at this most critical civic moment, in my view, this Court abdicates its duty to emphatically decide a legal controversy vitally important to the citizens of this Commonwealth. The eyes of the nation are upon us, and this Court has chosen to punt rather than to act. I will have no part of it.

Justice McCAFFERY joins this dissenting statement.

Justice McCAFFERY, dissenting.

I completely agree with Justice Todd that the existing record in this case, together with the arguments and admissions made by the Commonwealth in its briefs and by its attorneys at argument before this Court, is fully sufficient to determine, without equivocation, that a preliminary injunction should be granted through the November 6, 2012 general election. I thus fully join her excellent dissenting statement.

As Justice Todd astutely observes, the *Per Curiam* Order merely gives the Commonwealth Court another opportunity to "predict" whether the implementation of Act 18 would disenfranchise any otherwise qualified elector in the November

election, based on anticipated evidence of the Commonwealth's latest efforts—unmoored from the actual text of Act 18 and without benefit of governing regulation—to issue Photo ID cards to those who still lack them. However, a new prediction from the lower court will have no more legal significance before this Court than the existing one, and I *predict* that, once again, we will be presented with a record that establishes that many thousands—indeed, ultimately **uncountable** numbers—of otherwise qualified electors will lack a Photo ID for purposes of the upcoming election, and hence will be disenfranchised, despite the Commonwealth's last ditch efforts to loosen the standards established by Act 18. In the end, it is this Court that must determine whether the Pennsylvania Constitution requires the entering of an immediate preliminary injunction prior to the November election. For the good of the electorate, and to foster respect for the judiciary and the integrity of the electoral process, I agree with Justice Todd that **now** is the time for this Court to make that decision.

There is no doubt that the record, as it is, establishes the immediate and irreparable harm required for the injunction.[1] Prior to enacting Act 18, the General Assembly clearly failed to sufficiently consider the burdens and impediments that the law's requirements would place upon "the most vulnerable segments of our society." *Per Curiam* Order at 5. When Appellants' lawsuit challenging the constitutionality of Act 18 placed a spotlight on these burdens and impediments, the agencies charged with implementing Act 18 began efforts, first on or about May 23, 2012, and then on or about August 27, 2012, to relax the procedures for obtaining the requisite ID. Although these efforts may be laudable, they necessarily suffer from the compressed timeframe in which they are expected to achieve the purported goals of Act 18. Indeed,

1. Initially, it must be observed that the Commonwealth Court plainly erred by requiring Appellants to show immediate and "inevitable" harm. Perhaps that court made this error because of its mistaken belief that the only issue before it was whether a legislative requirement for a Voter Photo ID **generally** was facially unconstitutional, rather than whether the hasty implementation of Act 18 for purposes of the November 6, 2012 election violated the Pennsylvania Constitution.

the August 27, 2012 effort was instituted a mere ten weeks before the election. Where a fundamental constitutional right is at issue—arguably **the** fundamental right—an implementation of even a lesser burden on the exercise of that right, ten weeks before it is to be exercised, is simply unreasonable and constitutionally insupportable. Indeed, the Commonwealth's activities in this regard are a tacit admission that Act 18 is simply not ready for the prime time of the November 6, 2012 election.[2]

By contrast, the stipulations of the Commonwealth establish that, particularly as concerns the November 6, 2012 election, there is no genuine mischief for Act 18 to remedy. The Commonwealth stipulated, in relevant part, on July 12, 2012, as follows:

1. There have been no investigations or prosecutions of in-person voter fraud in Pennsylvania; and the parties do not have direct personal knowledge of any such investigations or prosecutions in other states;

2. The parties are not aware of any incidents of in-person voter fraud in Pennsylvania and do not have direct personal knowledge of in-person voter fraud elsewhere;

3. [The Commonwealth] will not offer any evidence in this action that in-person voter fraud has in fact occurred in Pennsylvania or elsewhere;

4. The sole rationale for the Photo ID law that will be introduced by [the Commonwealth] is that contained in [the Commonwealth's] amended answer to Interrogatory 1, served June 7, 2012.[3]

**2.** Additionally, I believe that Appellants have established that the availability of the PennDOT locations where the Commonwealth's efforts are to take place are inadequate to the task in regard to the November election because of limited hours, limited locations, and a failure to take measures that were implemented by other states, such as the use of mobile Photo ID units.

**3.** Among the reasons cited were that requiring a photo ID "improves the security and integrity of elections in Pennsylvania"; "ensure[s] that the public has confiden[ce] in the electoral process"; and "detect[s] and deter[s] voter fraud".

5. [The Commonwealth] will not offer any evidence or argument that in[-]person voter fraud is likely to occur in November 2012 in the absence of the Photo ID law [Act 18].

Indeed, the Commonwealth offered **no** evidence below of the existence of in-person voter fraud in this state or that in-person voter fraud is likely to occur in the upcoming election. The Commonwealth's interest in the implementation of this law, at least as concerns the November election, is somewhere from slight to symbolic. I wholeheartedly reject the arguments made by counsel for the Commonwealth before this Court that we must defer to the legislative findings and the evidence the legislature purportedly received concerning the existence or potentiality of in-person voter fraud. The Commonwealth declined to test such "evidence" in a court of law, and instead stipulated that, essentially, there was no known evidence of in-person voter fraud, and that Act 18 was not genuinely needed to combat in-person voter fraud in the November election. Stipulations have legal consequences, and the Commonwealth must live with those it entered. The purported evidence received by the legislature is thus of no moment,[4] and the balance of potential harm unquestionably weighs heavily in favor of an injunction.

In its lucid and directed description of the **relevant** issues involved in this case, the *Per Curiam* Order corrects several grave errors made by the Commonwealth Court below. Notably, this Court determines that the immediate issue raised by Appellants concerns whether the implementation of Act 18 for purposes of the November 6, 2012 general election violates constitutional rights of qualified electors of this Commonwealth, which is a question distinct from that upon which the Commonwealth Court placed its basic focus: *i.e.*, whether a Photo ID law **generally** violates such rights. *See Per Curiam* Order at 5–6. The *Per Curiam* Order also correctly deter-

4. The Commonwealth's arguments may have had greater resonance if Act 18 addressed a more innocuous subject, such as a licensure requirement for a **privilege.** However, Act 18 indisputably places new burdens upon a cherished **right,** and the **legal** evidence, or lack thereof, concerning the actual need for these new burdens assumes heightened significance when these burdens are challenged as unconstitutional.

mines that any voter disenfranchisement arising out of the Commonwealth's implementation of a Voter Photo ID requirement before the November 2012 election **obliges** the Commonwealth Court to enter a preliminary injunction. *See id.* at 7.[5] Notwithstanding the astute recognition in the *Per Curiam* Order of the Commonwealth Court's errors and the Order's illumination of the Commonwealth Court's obligation to enter a preliminary injunction under certain circumstances, I believe circumstances already exist such that we should remand with the specific directive to the Commonwealth Court to immediately grant the requested preliminary injunction. I do not believe that further hearings are either necessary or appropriate.

The Commonwealth contends that the legislature, in enacting Act 18, relied in part upon the 2005 recommendations of the Commission on Federal Election Reform ("the Carter–Baker Commission"). However, the legislature pointedly ignored the Commission's recommendation that a Photo ID requirement be phased in over two federal election cycles to ease the transition from the existing system. The Carter–Baker Commission also wisely determined that confidence in our electoral process may be achieved in "a uniform voter identification system **that is implemented in a way that increases, not impedes, participation.**" Carter–Baker Commission (2005), at iii (emphasis added); *see also id.* at 6. Act 18, enacted in March 2012, and subsequently altered by *ad hoc* implementation procedures, which are still in flux, substantially threatens to do just the opposite. Where there is concededly no harm that will be remedied by implementing Act 18 prior to the November 2012 election, where the potential for harm to the cherished right to vote to uncountable numbers of citizens is substantially threatened, and where this harm cannot be remedied by any post-election lawsuit, contrary to

**5.** *See In re Canvass of Absentee Ballots of 1967 Gen. Election,* 431 Pa. 165, 245 A.2d 258, 262 (1968) (holding that the disenfranchisement of 5,506 citizens would be "unconscionable"); and *Perles v. Cnty. Return Bd. Of Northumberland Cnty.,* 415 Pa. 154, 202 A.2d 538, 540 (1964) ("The disenfranchisement of even one person validly exercising his right to vote is an extremely serious matter.").

the Commonwealth Court's astounding belief, the need for immediate judicial action cannot be denied.

I was elected by the people of our Commonwealth, by Republicans, Democrats, Independents and others, as was every single Justice on this esteemed Court. I cannot now be a party to the potential disenfranchisement of even one otherwise qualified elector, including potentially many elderly and possibly disabled veterans who fought for the rights of every American to exercise their fundamental American right to vote. While I have no argument with the requirement that all Pennsylvania voters, at some reasonable point in the future, will have to present photo identification before they may cast their ballots, it is clear to me that the reason for the urgency of implementing Act 18 prior to the November 2012 election is purely political. That has been made abundantly clear by the House Majority Leader. Exhibit 42 at R.R.2073a. I cannot in good conscience participate in a decision that so clearly has the effect of allowing politics to trump the solemn oath that I swore to uphold our Constitution. That Constitution has made the right to vote a right verging on the sacred, and that right should never be trampled by partisan politics.

Accordingly, I respectfully dissent from the *Per Curiam* Order to the extent that it does not direct the Commonwealth Court to grant immediate injunctive relief but, instead, remands to the Commonwealth Court for additional hearings. I would remand to the Commonwealth Court for the express purpose of directing that court to immediately grant a preliminary injunction.

Justice TODD joins this Dissenting Statement.