# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In the Matter of Petition to Establish : 
Birth Facts of James Percell Harris : 
: 
Appeal of: Department of : No. 1195 C.D. 2021
Transportation : Argued: November 14, 2022


BEFORE:   HONORABLE ANNE E. COVEY, Judge
          HONORABLE CHRISTINE FIZZANO CANNON, Judge
          HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                                      FILED:  March 27, 2023

The Department of Transportation (DOT) appeals from the Philadelphia County Common Pleas Court's (trial court) October 20, 2021 decree (October 20 Decree) that established birth facts for James Percell Harris (Harris). The sole issue before this Court is whether the trial court violated the separation of powers doctrine by directing that DOT treat its October 20 Decree as the equivalent of a birth certificate so that Harris can obtain a REAL ID driver's license or identification card (ID), or a non-REAL ID driver's license or ID.  After review, this Court reverses in part and affirms in part.

On May 6, 2021, Harris filed a Petition to Establish Birth Facts (Petition) in the trial court.  Therein, he alleged:

> [Harris], by and through his undersigned counsel [(Counsel)], hereby petitions the [trial c]ourt for a [d]ecree establishing his birth facts for the purpose of obtaining a Pennsylvania [ID] and a delayed birth certificate.  In support of his [P]etition, [Harris] avers as follows:

1. [Harris], an indigent, 77-year-old resident of this county, was born on December 25, 1943[,] to Rosalee Sims and Charles Edward Harris in Rice, Prince Edward County, Virginia.

2. [Harris] seeks to establish his birth facts by this [P]etition.

3. [Harris] has an immediate need for proof of his birth facts in order to procure a government photo ID, [to] qualify for government assistance, [to] engage in banking transactions and [to] enter government buildings and airports, among other things.

4. No birth certificate was issued upon [Harris's] birth.

5. [Harris's] mother, Rosalee Sims, gave birth at her sister's Rice, Virginia home. [Harris] was delivered by a midwife. For reasons unknown to [Harris], his birth was never registered with the state of Virginia, and Virginia has no record of his birth. A true and correct copy of the Virginia acknowledgement that no such record is on file is attached hereto as Exhibit 1.

6. [Harris] has resided in Pennsylvania for more than six decades. His previous Philadelphia addresses included [sic] 3724 Dover Street, 3527 N. 15th Street, 1712 Peach Street[,] and 1610 W. Lehigh Avenue. From January 2018 through the present, he has resided at 1916 Berkshire Street, Apt. 2, Philadelphia, PA 19124.

7. The Social Security Administration issued a social security number and social security card[1] to [Harris] at a time when no birth certificate was required for the issuance of a social security card.

8. The Social Security Administration acknowledges [Harris's] birthdate as December 25, 1943, as shown in the correspondence attached hereto as Exhibit 2.

9. The Philadelphia Board of Elections likewise acknowledges [Harris's] birthdate, as shown on the voter registration certificate attached hereto as Exhibit 3.

---

[1] Counsel informed the trial court that Harris had lost his social security card. *See* R.R. at 47a.

2

10. [Harris's] cousins, Virginia Sims Martinez and Sarah Alice Holmes, both of whom lived with him at the time of his birth[,] and for several years thereafter, have attested to [Harris's] identity and birthdate as averred above. A true and correct copy of their verifications are attached as Exhibit 4 and 5 hereto.

11. Without a birth certificate, [Harris] has been unable to prove his identity, update his voter registration, apply for a passport[,] and seek assistance from the federal, state and municipal government[s].

12. Pennsylvania's procedure for obtaining a REAL[] ID likewise requires a birth certificate or passport, among other documents. [Harris] has neither of these documents. Moreover, [DOT] refuses to accept the voter registration card, Social Security document and other documents listed above in lieu of a birth certificate.

13. A Certificate of [United States (]U.S.[)] Citizenship from the Department of Homeland Security, in turn, requires either a birth certificate, Certificate of Naturalization or valid U.S. Passport.

14. A U.S. Passport application likewise requires the submission of a birth certificate as proof of citizenship.

15. [Harris] has never been convicted of a crime. He was arrested once but found not guilty. . . .

16. There are no judgments or decrees of like character of record against [Harris].

17. Virginia law permits the issuance of a delayed birth certificate where appropriate. . . .

18. The authority of the [trial c]ourt to issue an [o]rder establishing [Harris's] birth record is set forth in [Section 713 of the Probate, Estates and Fiduciaries Code (Probate Code),] 20 [Pa.C.S.] § 713[.]

WHEREFORE, [Harris] respectfully requests that th[e trial c]ourt, after a hearing on this [P]etition, enter the proposed form of [d]ecree attached, providing that the [d]ecree shall be sufficient proof of identity for use by [Harris] in securing a Photo [ID], a REAL[] ID, driver's

3

license, or comparable official [ID] from [DOT], and shall be sufficient in lieu of a birth certificate for use by all Pennsylvania government agencies, authorities and offices, including but not limited to public housing offices, and authorize and direct the Virginia state registrar to issue a delayed birth certificate to [Harris], as follows:

Date of birth: December 25, 1943
Full name at time of birth: James Percell Harris
Place of birth: Rice, Prince Edward County, Virginia
Gender at birth: Male
Mother's name: Rosalee Sims
Birthplace of mother: Rice, Prince Edward County, Virginia
Race of mother (as required by Virginia regulation 12VAC5-550-100B): African American
Father's name: Charles Edward Harris
Birthplace of father: Rice, Prince Edward County, Virginia
Race of father (as required by Virginia regulation 12VAC5-550-100B): African American
Subsequent name changes: [N]one
Subsequent gender changes: [N]one

Reproduced Record (R.R.) at 9a-12a.

On May 12, 2021, the trial court entered a Rule to Show Cause, scheduling a hearing for June 15, 2021, and requiring service upon all interested parties. The hearing was continued to June 16, 2021. On June 9, 2021, Harris filed a Verification of Service reflecting that Harris had served the Virginia Attorney General, the Virginia General Counsel, and a Senior Assistant Attorney General in the Health Services Section of the Virginia Office of Attorney General, along with the Director and State Registrar of the Virginia Office of Vital Records. On June 15, 2021, Harris filed a Supplemental Verification of Service, wherein Harris verified that he served the same individuals, and that notice of the Rule to Show Cause and Order Continuing the Hearing had been published in the Legal Intelligencer and Metro.

4

On June 16, 2021, the trial court conducted the hearing, at which only Harris and Counsel appeared. Counsel described the Petition and Harris's circumstances, and referenced the exhibits attached thereto, including Harris's cousins' affidavits vouching for his birth as represented in the Petition.[2] Thereafter, the trial court stated:

> I do not have any questions, [Counsel]. I think you've adequately summarized what your client is facing and also adequately put into the record his place of birth[,] whatever other documents are attached to the [P]etition, as well as the Social Security [sic], so I will grant your [P]etition today. It is granted.

R.R. at 47a.

On June 17, 2021, the trial court filed a decree[3] (June 17 Decree) granting the Petition establishing Harris's birth facts and further ordering:

> 2. This [June 17] Decree shall be sufficient proof of identity for use by [Harris] in securing a REAL[] ID or driver's license from [DOT], or comparable official [ID], and shall be sufficient in lieu of a birth certificate for use by all Pennsylvania and federal government agencies, authorities and offices.
>
> 3. The Virginia Department of Health is hereby authorized and directed to issue a delayed birth certificate to [Harris] reflecting the foregoing birth facts.

R.R. at 50a-51a.

On June 18, 2021, Counsel contacted DOT regarding the June 17 Decree before submitting an application to DOT for an ID.[4] By June 22, 2021 email,

---

[2] On the same date, the Pennsylvania State Police notified the trial court that Harris's fingerprint cards had been searched in the Criminal Records and Identification Division Central Repository, and stated: "This person is not subject to [the Criminal History Record Information Act,] 18 P[a.]C.S. [§§] 91[01-9106], and the fingerprints have been destroyed." R.R. at 52a.

[3] The decree is dated June 16, 2021.

[4] Counsel also contacted the Virginia State Attorney General's Office, seeking the issuance of a delayed birth certificate for Harris, and forwarded to it the June 17 Decree. By August 31,

a DOT representative notified Harris that "[a] standard [non-REAL ID] can be issued with [the] doc[ument] you provided[.] No[t] sure about REAL ID at this point[.]" R.R. at 182a. That same day, Counsel responded that he and Harris would visit the local office to apply for a regular ID, but that Harris "hasn't been able to get a replacement [S]ocial [S]ecurity card, because he doesn't have a photo ID necessary to do so." R.R. at 182a. The DOT representative answered: "That definitely will be an issue; a [S]ocial [S]ecurity card is required for issuance of [an] ID." R.R. at 181a. Counsel retorted: "But it's a catch-22, since [Harris] needs the ID to get a replacement [Social Security] card. What else might be acceptable?" *Id*. The DOT representative replied: "A receipt from [the Social Security Administration] that [Harris] has applied for a replacement [S]ocial [S]ecurity card and they are sending it in two weeks **plus** a W2 or copy of his [S]ocial [Security number]." *Id*. Counsel explained: "[Harris] doesn't have a W2; he is indigent, which is why I am representing him on a pro bono basis, and [he] can't apply for a replacement card without a photo ID, as I previously explained." *Id*.

On July 6, 2021, Counsel informed the DOT representative: "Harris has been able to obtain a duplicate [S]ocial [S]ecurity card, so we will be coming in to apply for a photo ID and/or REAL[] ID tomorrow." R.R. at 180a. Another DOT representative then notified Counsel that "the documents provided cannot be accepted in lieu of the birth certificate. [Harris] will need his delayed birth certificate, [S]ocial [S]ecurity card and two proofs of address." R.R. at 179a. Counsel inquired: "Even for a regular photo ID? I've been doing this for clients for

2021 email, the Virginia State Attorney General's Office informed Counsel: "[I]t seems you'll need to authenticate the [June 17 Decree] in the Circuit Court in the county of birth, pursuant to Virginia Code Sec[tion] 32.1-260[, Va. Code Ann. 32.1-260 (1950), *as amended*,] . . . . Please notice my client on that filing, pursuant to Virginia Code Sec[tion] 32.1-260(D)[, Va. Code Ann. 32.1-260(D) (1950), *as amended*,], so Vital Records is given the opportunity to respond." R.R. at 148a.

years." *Id.* On July 7, 2021, Deputy Chief Counsel, Phillip Bricknell, from the Governor's Office of General Counsel, responded: "The relevant statutes and regulations say what they say. [Harris] is required to produce a delayed birth certificate, [S]ocial [S]ecurity card, and two proofs of address to support his application for an [ID]." R.R. at 178a.

On July 15, 2021, DOT filed a Motion for Reconsideration (Motion) of the June 17 Decree, arguing that DOT had not received proper notice as a necessary party to the matter. The trial court granted DOT's Motion and ordered DOT to file a response to the Petition within 20 days. On August 4, 2021, DOT filed a Response in Opposition including a Motion to Dismiss the Petition (DOT's Response). On September 7, 2021, Harris filed a Reply Memorandum to DOT's Response and an Answer with New Matter. On September 23, 2021, DOT filed a Reply to New Matter.

On October 20, 2021, the trial court entered the October 20 Decree, again granting the Petition establishing Harris's birth facts and ordering other relief as follows:

> 1. The [trial c]ourt finds, upon sufficient evidence thereof, the following birth facts applicable to [Harris]:
>
> Date of birth: December 25, 1943
> Full name at time of birth: James Percell Harris
> Place of birth: Rice, Prince Edward County, Virginia
> Gender at birth: Male
> Mother's name: Rosalee Sims
> Birthplace of mother: Rice, Prince Edward County, Virginia
> Race of mother (as required by Virginia regulation 12VAC5-550-100B): African American
> Father's name: Charles Edward Harris
> Birthplace of father: Rice, Prince Edward County, Virginia
> Race of father (as required by Virginia regulation 12VAC5-550-100B): African American
> Subsequent name changes: [N]one

7

Subsequent gender changes: [N]one

2. This Decree shall be sufficient proof of identity for use by [Harris] in securing a REAL[] ID or driver's license from [DOT], or comparable official [ID], and shall be sufficient in lieu of a birth certificate for use by all Pennsylvania and federal government agencies, authorities and offices.

3. The Virginia Department of Health is hereby authorized and directed to issue a delayed birth certificate to [Harris] reflecting the foregoing birth facts.

R.R. at 213a. On October 27, 2021, DOT appealed to this Court.[5]

On November, 1, 2021, the trial court directed DOT to file a Statement of Errors Complained of on Appeal pursuant to Pennsylvania Rule of Appellate Procedure (Rule) 1925(b) (Rule 1925(b) Statement). On November 10, 2021, DOT

---

[5] Harris argues that DOT mistakenly relies on Section 762(a)(3) of the Judicial Code, 42 Pa.C.S. § 762(a)(3), as the basis for this Court's jurisdiction, and that proper jurisdiction for this appeal lies in the Pennsylvania Superior Court. Harris correctly points out that Section 762(a)(3) of the Judicial Code pertains only to appeals from Commonwealth agencies which were taken to the common pleas court under Section 933 of the Judicial Code, 42 Pa.C.S. § 933, relating to appeals from government agencies. Here, there was no appeal from a governmental agency to the trial court, rather, DOT simply appealed from the trial court's decision. Nonetheless, Pennsylvania Rule of Appellate Procedure (Rule) 741(a) provides:

> The failure of an appellee to file an objection to the jurisdiction of an appellate court on or prior to the last day under these rules for the filing of the record shall, unless the appellate court shall otherwise order, operate to perfect the appellate jurisdiction of such appellate court, notwithstanding any provision of law vesting jurisdiction of such appeal in another appellate court.

Pa.R.A.P. 741(a). Harris acknowledges that he did not object to this Court's jurisdiction within the time permitted by Rule 741(a) and, thus, concedes he has waived the issue. Nonetheless, he raises the issue to counter DOT's statement of jurisdiction. Accordingly, because Harris's failure to object to this Court's jurisdiction operated to perfect jurisdiction in this Court, this Court shall address the merits of the appeal.

"Our standard of review of a non-jury trial is to determine whether the findings of the trial court are supported by [substantial] evidence, and whether an error of law was committed." *Slack v. Slack*, 256 A.3d 472, 477 n.9 (Pa. Cmwlth. 2021) (quoting *City of Phila. v. Galdo*, 181 A.3d 1289, 1291 n.2 (Pa. Cmwlth. 2018), *aff'd*, 217 A.3d 811 (Pa. 2019)).

filed its Rule 1925(b) Statement.  On March 31, 2022, the trial court issued its opinion pursuant to Rule 1925(a) (Rule 1925(a) Opinion).[6]

DOT argues that the trial court abused its discretion, committed an error of law, and violated the separation of powers doctrine by directing that DOT treat the October 20 Decree as the equivalent of a birth certificate for purposes of issuing Harris a REAL ID driver's license or ID, or a non-REAL ID driver's license or ID.

Initially, DOT is charged with issuing driver's licenses and IDs in Pennsylvania.  Statutory and regulatory provisions that govern DOT's ability to issue a driver's license or ID to an applicant include: the REAL ID Act of 2005[7] (REAL ID Act); the Pennsylvania REAL ID Compliance Act, Act of May 25, 2017, P.L. 6, 74 P.S. §§ 401-409 (Pa. Compliance Act); Section 1510 of the Vehicle Code, 75 Pa.C.S. § 1510 (relating to issuance and content of driver's licenses); relevant Department of Homeland Security (DHS) Regulations contained in Title 6, Part 37 of the Code of Federal Regulations, 6 C.F.R. §§ 37.1-37.71 (relating to REAL ID driver's licenses and IDs); and Section 91.4 of DOT's Regulations, 67 Pa. Code § 91.4 (relating to ID applications).  DOT contends that the trial court's October 20 Decree intrudes on its authority under federal and state law to evaluate applications and issue drivers' licenses and IDs.

**Relevant Federal Law**

Section 201 of the REAL ID Act provides, in pertinent part:

In [the REAL ID Act], the following definitions apply:

(1) Driver's license.  The term 'driver's license'—

---

[6] The Homeless Advocacy Project (HAP) filed an Amicus Curiae Brief supporting affirmance of the trial court's October 20 Decree.

[7] Act of May 11, 2005, P.L. 109-13, 119 Stat. 311, *as amended*.

(A) means a motor vehicle operator's license, as defined in [S]ection 30301 of . . . [the] [U.S.] Code[, 49 U.S.C. § 30301]; and

(B) includes driver's licenses stored or accessed via electronic means, such as mobile or digital driver's licenses, which have been issued in accordance with regulations prescribed by the Secretary [of DHS (Secretary)].

(2) Identification card. The term 'identification card'—

(A) means a personal [ID], as defined in [S]ection 1028(d) of . . . [the] [U.S.] Code[, 18 U.S.C. § 1028(d)], issued by a [s]tate; and

(B) includes [IDs] stored or accessed via electronic means, such as mobile or digital [IDs], which have been issued in accordance with regulations prescribed by the Secretary.

(3) Official purpose. The term 'official purpose' includes but is not limited to accessing [f]ederal facilities, boarding federally regulated commercial aircraft, entering nuclear power plants, and any other purposes that the Secretary shall determine.

49 U.S.C. § 30301 note, § 201.

Section 202 of the REAL ID Act provides, in relevant part:

Minimum requirements and issuance standards for [f]ederal recognition.

(a) Minimum standards for [f]ederal use.

(1) In general. Beginning [three] years after the date of the enactment of this division, a [f]ederal agency may not accept, for any official purpose, a driver's license or [ID] issued by a [s]tate to any person unless the [s]tate is meeting the requirements of this section.

(2) State certifications. The Secretary shall determine whether a [s]tate is meeting the requirements of this section based on certifications made by the [s]tate to the Secretary. Such certifications shall be made at such times and in such manner as the Secretary may prescribe by regulation.

(3) Limitation. The presentation of digital information from a mobile or digital driver's license or [ID] to an official of a [f]ederal agency for an official purpose may not be construed to grant consent for such [f]ederal agency to seize the electronic device on which the license or [ID] is stored or to examine any other information contained on such device.

(b) Minimum driver's license and [ID] requirements. To meet the requirements of this section, a [s]tate shall include, at a minimum, the following information and features on, or as part of, each driver's license and [ID] issued to a person by the [s]tate:

(1) The person's full legal name.

(2) The person's date of birth.

(3) The person's gender.

(4) The person's driver's license or ID number.

(5) A digital photograph of the person, which may be the photograph taken by the [s]tate at the time the person applies for a driver's license or [ID] or may be a digital photograph of the person that is already on file with the [s]tate.

(6) The person's address of principal residence.

(7) The person's signature.

(8) Security features designed to prevent tampering, counterfeiting, or duplication of the driver's license or [ID] for fraudulent purposes.

(9) A common machine-readable technology, with defined minimum data elements.

(c) Minimum issuance standards.

(1) In general. **To meet the requirements of this section, a [s]tate shall require, at a minimum, presentation and verification of the following information before issuing a driver's license or [ID] to a person**:

11

(A) A photo identity document, except that a non-photo identity document is acceptable if it includes both the person's full legal name and date of birth.

(B) **Documentation showing the person's date of birth**.

(C) The person's [S]ocial [S]ecurity account number or verification that the person is not eligible for a [S]ocial [S]ecurity account number.

(D) Documentation showing the person's name and address of principal residence.

49 U.S.C. § 30301 note, § 202 (emphasis added).

Section 37.1 of DHS's Regulations states:

(a) Subparts A through E of this part[, 6 C.F.R. §§ 37.1-37.65,] apply to [s]tates and U.S. territories that choose to issue driver's licenses and [IDs] that can be accepted by [f]ederal agencies for official purposes.

(b) Subpart F[, 6 C.F.R. § 37.71,] establishes certain standards for [s]tate-issued driver's licenses and [IDs] issued by [s]tates that participate in REAL ID, but that are not intended to be accepted by [f]ederal agencies for official purpose under [S]ection 202(d)(11) of the REAL ID Act[, 49 U.S.C. § 30301, note § 202(d)(11)].

6 C.F.R. § 37.1.

Section 37.11 of DHS's Regulations describe the application and documents required to be provided and mandates:

(c) Identity.  (1) **To establish identity, the applicant must present at least one of the following source documents**:

(i) Valid, unexpired U.S. passport.

(ii) **Certified copy of a birth certificate filed with a [s]tate Office of Vital Statistics or equivalent agency in the individual's [s]tate of birth**.

12

(iii) Consular Report of Birth Abroad [] issued by the U.S. Department of State, Form FS-240, DS-1350 or FS-545.

(iv) Valid, unexpired Permanent Resident Card (Form I-551) issued by DHS or [Immigration and Naturalization Service].

(v) Unexpired employment authorization document [] issued by DHS, Form I-766 or Form I-688B.

(vi) Unexpired foreign passport with a valid, unexpired U.S. visa affixed accompanied by the approved I-94 [F]orm documenting the applicant's most recent admittance into the [U.S.]

(vii) Certificate of Naturalization issued by DHS, Form N-550 or Form N-570.

(viii) Certificate of Citizenship, Form N-560 or Form N-561, issued by DHS.

(ix) REAL ID driver's license or [ID] issued in compliance with the standards established by this part.

(x) Such other documents as DHS may designate by notice published in the Federal Register.

. . . .

(d) Date of birth.  To establish date of birth, an individual must present at least one document included in paragraph (c) of this [S]ection.

6 C.F.R. § 37.11 (emphasis added).

Section 37.3 of DHS's Regulations defines "[b]irth certificate" as "the record related to a birth that is permanently stored either electronically or physically at the [s]tate Office of Vital Statistics or equivalent agency in a registrant's [s]tate of birth[,]" and "[c]ertified copy of a birth certificate" as "a copy of the whole or part of a birth certificate registered with the [s]tate that the [s]tate considers to be the same as the original birth certificate on file with the [s]tate Office of Vital Statistics or equivalent agency in a registrant's [s]tate of birth."  6 C.F.R. § 37.3.

13

Notably, Section 37.11(h) of DHS's Regulations permits the establishment of an exceptions process:

> **A [s]tate [department of motor vehicles] <u>may</u> choose to establish a written, defined exceptions process for persons who, for reasons beyond their control, are unable to present all necessary documents and must rely on alternate documents to establish identity or date of birth.** Alternative documents to demonstrate lawful status will only be allowed to demonstrate U.S. citizenship.
>
> (1) Each [s]tate establishing an exceptions process must make reasonable efforts to establish the authenticity of alternate documents each time they are presented and indicate that an exceptions process was used in the applicant's record.
>
> (2) The [s]tate shall retain copies or images of the alternate documents accepted pursuant to [Section] 37.31 of [DHS's Regulations].
>
> (3) The [s]tate shall conduct a review of the use of the exceptions process, and pursuant to subpart E of this part, prepare and submit a report with a copy of the exceptions process as part of the certification documentation detailed in [Section] 37.55 [of DHS's Regulations, 6 C.F.R. § 37.55].

6 C.F.R. § 37.11(h) (bold and underline emphasis added). Section 37.13(b)(3) of DHS's Regulations states:

> States must verify the documents and information required under [Section] 37.11 [of DHS's Regulations] with the issuer of the document. States shall use systems for electronic validation of document and identity data as they become available or use alternative methods approved by DHS.
>
> . . . .
>
> (3) States must verify birth certificates presented by applicants. States should use the Electronic Verification of Vital Events [] system or other

14

electronic systems whenever the records are available. If the document does not appear authentic upon inspection or the data does not match and the use of an exceptions process is not warranted in the situation, the [s]tate must not issue a REAL ID driver's license or [ID] to the applicant until the information verifies, and should refer the individual to the issuing office for resolution.

6 C.F.R. § 37.13(b)(3).

## Relevant State Law

On May 27, 2017, the Pennsylvania General Assembly enacted the Pa. Compliance Act. Section 3 of the Pa. Compliance Act provides:

[DOT] and any other Commonwealth agency **shall comply with the REAL ID Act** . . . **and regulations promulgated under th**[**e Real ID A**]**ct**. In complying with the requirements of the REAL ID Act . . . , [DOT] shall provide an eligible applicant with an option to obtain either a standard-issued driver's license or photo [ID] or a REAL ID. [DOT] shall provide the applicant with a brief description that reasonably describes the content, requirements and restrictions of a standard-issued driver's license or photo [ID] or a REAL ID.

74 P.S. § 403 (emphasis added). Section 1510(b) of the Vehicle Code states, in pertinent part: "[DOT] shall, upon payment of the required fee, issue an [ID] to any person [10] years of age or older who has made application therefor **in such manner as [DOT] shall prescribe** . . . ." 75 Pa.C.S. § 1510(b) (emphasis added).

Further, Section 91.4(b) of DOT's Regulations state:

Application for an [ID] by a person other than specified in subsection (a) [(pertaining to persons in possession of a Pennsylvania driver's license)] shall be made at a driver examination station of this Commonwealth. The applicant shall provide his name, address, date of birth, and a document verifying the applicant's date of birth and identity. The following are acceptable documents for proving identity and date of birth:

15

(1) Birth certificate.

(2) Baptismal certificate.

(3) School certificate.

(4) Passport.

(5) Citizenship papers.

(6) Marriage record.

(7) Armed Forces ID [].

(8) Immigration certificate.

(9) Selective service ID [].

(10) Pennsylvania driver's license.

(11) Pennsylvania [ID].

(12) Pennsylvania camera card.

67 Pa. Code § 91.4(b).

## Discussion

DOT contends that its actions in processing and evaluating drivers' license and ID applications are mandated by the aforementioned federal and state statutes and regulations, and the trial court's October 20 Decree improperly interferes in DOT's administrative authority.

The Pennsylvania Supreme Court has explained:

The separation of powers doctrine is essential to our triparte governmental framework and is the cornerstone of judicial independence. It is inherent in the Pennsylvania Constitution and makes manifest that the three branches of government are co-equal and independent, and divides power accordingly. The governing structure of our Commonwealth, like the federal government, is divided into three equal branches, the legislative, *see* PA. CONST. art II, § 1 ("The legislative power of this Commonwealth shall be vested in a General Assembly . . . ."); the executive, *see* PA. CONST. art. IV, § 2 ("The supreme executive power shall be vested in the Governor . . . ."); and the judicial, *see* PA. CONST. art. V, § 1 ("The judicial

16

power of the Commonwealth shall be vested in a unified judicial system . . . .").

> The rationale underlying this separation of powers is that it prevents one branch of government from exercising, infringing upon, or usurping the powers of the other two branches. Thus, to "avert the danger inherent in the concentration of power in any single branch or body," no branch may exercise the functions delegated to another branch. *Jefferson C[nty.] C[t.] Appointed Emp[s.] Ass[']n v. P[a.] Lab[.] Rel[s.] B[d.]*, . . . 985 A.2d 697, 706-07 ([Pa.] 2009); *see generally Markham v. Wolf*, . . . 190 A.3d 1175, 1183 ([Pa.] 2018). The prohibition on one branch of government encroaching upon a sister branch's powers is, in turn, related to the system of checks and balances, which prevents one branch from acting unchecked. *Jefferson C[nty.]*, 985 A.2d at 706. For checks and balances to properly work, each branch must be kept from controlling or coercing the other. Insuring that each branch is co-equal and independent is the foundation of the separation of powers doctrine, and the avoidance of the concentration of governmental powers in one branch is essential to our freedom and liberty.

*Renner v. Ct. of Common Pleas of Lehigh Cnty.*, 234 A.3d 411, 419-20 (Pa. 2020).

> The dividing lines among the three branches "are sometimes indistinct and are probably incapable of any precise definition." *Stander v. Kelley*, . . . 250 A.2d [474,] 482 [(Pa. 1969)] (plurality opinion). **Under the principle of separation of the powers of government**, **however**, **no branch should exercise the functions exclusively committed to another branch**.

*Sweeney v. Tucker*, 375 A.2d 698, 705 (Pa. 1977) (emphasis added). "[DOT] belongs to the executive branch, and the [trial court] belongs to the judicial branch. Neither may control the other nor act as the agent for the other." *Smires v. O'Shell*, 126 A.3d 383, 391 (Pa. Cmwlth. 2015).

The trial court reasoned in its Rule 1925(a) Opinion that under Section 713 of the Probate Code, 20 Pa.C.S. § 713, the trial court "possesses jurisdiction to

17

establish or amend the birth records of Philadelphia residents."[8]   R.R. at 237a.

Section 713 of the Probate Code states:

> The provisions of [S]ection 711 [of the Probate Code] (relating to mandatory exercise of jurisdiction through orphans' court division in general), insofar as they relate to adoptions and birth records, shall not apply to Philadelphia County.   In Philadelphia County the jurisdiction over adoptions and all proceedings which may be necessary to be presented to a court for determination with regard to issues concerning recordation of birth and birth records or the alteration, amendment or modification of such birth records or the right to obtain a certified copy of the same, shall be exercised through the family court division of the court of common pleas.   Whenever a resident of Philadelphia is entitled to take an appeal from the action of the Department of Health in connection with any matters concerning birth records, the appeal shall be taken to the family court division of the court of common pleas of Philadelphia.  **In all other matters in which a petition is addressed to a court by a resident of Philadelphia in connection with matters of birth records**, **the filing of which petition is not in the nature of an appeal**[,] **but is an original proceeding**, **the petition shall be determined by the family court division of the court of common pleas of Philadelphia** [**County**].

20 Pa.C.S. § 713 (emphasis added).  The trial court concluded it "was well within its jurisdiction to establish [Harris's birth facts]."[9]  R.R. at 238a.  However, whether the trial court had jurisdiction over the matter is not at issue here.  Rather, the issue

---

[8] Further, under Section 931(a) of the Judicial Code, 42 Pa.C.S. § 931, the courts of common pleas have unlimited original jurisdiction of all actions and proceedings, except where exclusive original jurisdiction of an action is vested by statute or rule in another court of the Commonwealth.

[9] The October 20 Decree referenced Section 713 of the Probate Code, and also Section 1550(a) of the Vehicle Code, 75 Pa.C.S. 1550(a), stating that Section 1550(a) of the Vehicle Code "provides this [trial c]ourt with jurisdiction to hear appeals of [DOT's] decisions regarding whether a license shall issue."  R.R. at 212a n.1.  Importantly, that matter before the trial court was not an appeal of a DOT decision but, rather, Harris's Petition.

18

before this Court is whether the trial court had authority to confer the relief it granted Harris.

Determining eligibility for a REAL ID driver's license and/or ID or a non-REAL ID driver's license and/or ID are functions legislatively granted to DOT, an executive agency. The matter presently before this Court is not an appeal from the trial court's order reviewing a DOT determination denying Harris a driver's license or ID. Harris has not applied, and DOT has not refused his application.[10] Rather, DOT has appealed from a trial court declaration that the October 20 Decree "**shall be sufficient proof** of identity for use by [Harris] in securing a REAL[] ID or driver's license from [DOT] or comparable official identity card . . . ." R.R. at 212a-213a (emphasis added).

It is DOT's legislatively mandated role to determine whether an applicant has satisfied the statutory and regulatory requirements to prove identity. Section 3 of the Pa. Compliance Act requires DOT to comply with the REAL ID Act and corresponding DHS Regulations. Section 37.11(c)(1) of DHS's Regulations mandates that "[t]o establish identity, the applicant must present at least one of the following source documents: . . . . (ii) [c]ertified copy of a birth certificate filed with a [s]tate Office of Vital Statistics or equivalent agency in the individual's [s]tate of

---

[10] The law is well established that a "[c]ourt may not interfere until an agency has committed a manifest abuse of discretion or committed an error of law." *Pa. Crime Comm'n v. Nacrelli*, 5 Pa. Cmwlth. 551, 574 (1972).

> So long as one may garner from the statute its legislative purpose, and that purpose is within the constitutional power of the legislature, the investigative agency may set its own reasonable guidelines to carry out that legislative purpose. There is no law . . . standing for the proposition that the statute must set forth such guidelines. **A citizen who believes he has been aggrieved by such guidelines may always come to the judicial branch to test them for the protection of his rights**.

*Nacrelli*, 5 Pa. Cmwlth. at 564-65 (emphasis added).

19

birth." 6 C.F.R. § 37.11(c)(1). DHS's Regulations define "[b]irth certificate" as "the record related to a birth that is permanently stored either electronically or physically at the [s]tate Office of Vital Statistics or equivalent agency in a registrant's [s]tate of birth[,]" and "[c]ertified copy of a birth certificate" as "a copy of the whole or part of a birth certificate registered with the [s]tate that the [s]tate considers to be the same as the original birth certificate on file with the [s]tate Office of Vital Statistics or equivalent agency in a registrant's [s]tate of birth." 6 C.F.R. § 37.3. Thus, in complying with its statutory mandate, DOT is required to determine whether an applicant has satisfied the federally mandated requirements, and the mandates of Vehicle Code Section 1510(b) and DOT Regulation 91.4(b) before issuing a state ID.

The trial court's preemptive determination that its October 20 Decree shall be sufficient proof of identity to secure a driver's license or ID from DOT is contrary to the explicit legislative and regulatory requirements. *See Sweeney*. Similarly, the October 20 Decree attempts to compel "all Pennsylvania and federal government agencies, authorities and offices" to accept the October 20 Decree without regard to relevant statutory requirements binding such agencies. R.R. at 213a. Thus, the trial court's October 20 Decree violates the separation of powers doctrine. This Court is therefore constrained to reverse Paragraph 2 of the trial court's October 20 Decree.

Importantly, Section 37.11(h) of DHS's Regulations **permits** states to "establish a written, defined exceptions process for persons who, for reasons beyond their control, are unable to present all necessary documents and must rely on alternate documents to establish identity or date of birth." 6 C.F.R. § 37.11(h). Neither the Pennsylvania General Assembly nor DOT[11] has done so.

---

[11] Section 1510(b) of the Vehicle Code permits DOT to issue an ID "to any person [10] years of age or older who has made application therefor **in such manner as [DOT] shall prescribe**

20

The U.S. Supreme Court has declared that "**the essential and patently unobjectionable purpose of state government [is] to serve the citizens of the [s]tate**." *McBurney v. Young*, 569 U.S. 221, 236 (2013) (emphasis added) (quoting *Reeves, Inc. v. Stake*, 447 U.S. 429, 442 (1980)). **DHS has authorized DOT to furnish relief**, and although not *mandated* by Section 37.11(h) of DHS's Regulations, **DOT can best serve some of the Commonwealth's most vulnerable citizens by establishing a compliant exceptions process for those unable to produce a birth certificate**. *See Applewhite v. Commonwealth*, 54 A.3d 1, 4 (Pa. 2012) ([I]ndividuals lacking [IDs] are "members of some of the most vulnerable segments of our society (the elderly, disabled members of our community, and the financially disadvantaged)."). The lack of identification can impair an individual's right to vote, ability to travel by air, enter public buildings, and access public assistance.[12] Herein, it is undisputed that Harris has lived in Pennsylvania for approximately 60 years, his birth was not registered when he was born in Virginia or thereafter and, thus, there is no birth certificate on file with Virginia's Office of Vital Statistics. Harris does not have the documents necessary to qualify for a REAL ID or non-REAL ID.

Referencing the "vital nature" of birth certificates in modern times, the U.S. District Court for the District of Rhode Island recognized:

> [W]ithout that slip of paper, a person's identity and legitimacy are at risk in a variety of aspects. In one way or another, the right to vote, the right to enroll in public schools, the right to participate in certain social programs,

. . . ." 75 Pa.C.S. § 1510(b). Section 91.4(b) of *DOT's Regulations*, not the Vehicle Code, dictates acceptable documents for proving identity and date of birth. Thus, DOT could establish the exceptions process envisioned in Section 37.11(h) of DHS's Regulations.

[12] HAP asserts in its brief that "[s]imple, everyday activities can become significant challenges for people without identification, including renting an apartment or hotel room, completing forms to start a new job, obtaining prescription medication, entering a government building, and applying for public benefits." HAP Br. at 4.

the right to travel internationally, are all dependent on the production of a birth certificate.

*deLeiris v. Scott*, 642 F. Supp. 1552, 1565-66 (D.R.I. 1986). Harris's inability to obtain a state ID due to his lack of a birth certificate similarly burdens his rights. Accordingly, this Court urges the General Assembly or DOT to implement an exceptions process consistent with 6 C.F.R. § 37.11(h) of DHS's Regulations for Harris and individuals who share Harris's circumstances. Nonetheless, because DOT has not provided an exceptions process, the trial court may not preemptively intrude upon DOT's statutorily mandated responsibilities.[13]

For all of the above reasons, Paragraph 2 of the trial court's October 20 Decree is reversed, and the trial court's October 20 Decree is affirmed in all other respects.

_____
ANNE E. COVEY, Judge

---

[13] Given that the trial court's October 20 Decree violates the separation of powers doctrine and, further, that Harris has **not** yet submitted an application for an ID which DOT has refused and for which there is no appeal before this Court, this Court may not decide whether such refusal is erroneous.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In the Matter of Petition to Establish : 
Birth Facts of James Percell Harris :
 :
Appeal of: Department of : No. 1195 C.D. 2021
Transportation :

## O R D E R

AND NOW, this 27th day of March, 2023, the Philadelphia County Common Pleas Court's October 20, 2021 decree (Decree) is REVERSED in part and AFFIRMED in part. Paragraph 2 of the Decree is REVERSED. The Decree is AFFIRMED in all other respects.

_____
ANNE E. COVEY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In the Matter of Petition to Establish   :
Birth Facts of James Percell Harris   :
                                   :   No. 1195 C.D. 2021
Appeal of: Department of          :   ARGUED: November 14, 2022
Transportation                   :


BEFORE:    HONORABLE ANNE E. COVEY, Judge
                 HONORABLE CHRISTINE FIZZANO CANNON, Judge
                 HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


## OPINION NOT REPORTED

**CONCURRING OPINION BY**
**SENIOR JUDGE LEADBETTER**            **FILED: March 27, 2023**


I concur in the result reached by the majority in light of the procedural posture of this case. I would like to make clear, however, that if an application for a REAL ID driver's license or identification card (ID), or a non-REAL ID driver's license or ID card is denied by the Department of Transportation (DOT), this Court would have authority to review that decision for abuse of discretion and, in that circumstance, there would be no separation of powers issue. *See* Section 1550 of the Vehicle Code, 75 Pa.C.S. § 1550 (judicial review section providing, in pertinent part, that "[a]ny person who has been denied a driver's license . . . by [DOT] shall have the right to appeal to the court vested with jurisdiction of such appeals by or pursuant to Title 42 . . . ."). Further, under the undisputed facts of this matter, I believe it would be a manifest abuse of discretion if DOT were to refuse to exercise its discretion to issue at least a non-REAL ID card to Mr. Harris and/or to establish an exception process

for issuance of a REAL ID to persons in situations like that of Mr. Harris, i.e., who are unable to obtain a birth certificate through no fault of their own.[1]

 

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

---

[1] It would appear that the order issued by the Court of Common Pleas would satisfy the documentary requirement of the federal statute, Section 202 of the REAL ID Act of 2005, 49 U.S.C. § 30301 note, § 202, ("non-photo identity document is acceptable if it includes both the person's full legal name and date of birth"), although it does not satisfy the regulations promulgated by either the Department of Homeland Security or DOT.